1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10                      EASTERN DISTRICT OF CALIFORNIA

11                            ----oo0oo----

12

ROMESH SOIN and ALMA SOIN,          NO. CIV. 2:12-634 WBS EFB
13
            Plaintiffs,
14                                  MEMORANDUM AND ORDER RE:
     v.                             MOTION FOR PRELIMINARY
15                                  INJUNCTION
FEDERAL NATIONAL MORTGAGE
16   ASSOCIATION a/k/a FANNIE MAE;
SUNTRUST MORTGAGE, INC.; and
17   DOES 1-100 inclusive,

18          Defendants.
                                    /
19

20                            ----oo0oo----

21

22          Plaintiffs Romesh Soin and Alma Soin filed a state

23   action against defendants Federal National Mortgage Association

24   ("Fannie Mae") and Suntrust Mortgage, Inc. ("Suntrust") bringing

25   claims arising from allegedly wrongful conduct related to a loan

26   modification application under the Home Affordable Modification

27   Program ("HAMP").  Currently before the court is plaintiffs'

28   motion for preliminary injunction.  (Docket No. 16.)

1

1  I.    Procedural and Factual Background

2         According to plaintiffs, they are the owners of real

3  property located at 9251 Bright Stars Court in Elk Grove,

4  California ("Subject Property").  (Not. of Removal Ex. 1

5  ("Compl.") ¶ 1 (Docket No. 1).)  On or about October 19, 2007,

6  plaintiff obtained a loan from Suntrust in the amount of

7  $250,000, which was secured by the Subject Property.  (Id. ¶ 8,

8  Ex. 1.)  The Complaint states that, "at some unknown point after

9  the close of escrow, the beneficial rights to the Subject Loan

10 were purportedly transferred to FANNIE MAE."  (Id. ¶ 9.)

11         After plaintiffs allegedly began to experience

12 financial difficulties, they submitted a loan modification

13 application to Suntrust.  (Id. ¶ 10.)  In December 2009, Suntrust

14 issued plaintiffs a Home Affordable Modification Program ("HAMP")

15 Loan Trial Period Plan ("TPP").[1]  (Id. ¶ 11, Ex. 2.)  Under the

16 TPP, plaintiffs agreed to make four monthly payments of $1,088.28

17 instead of their usual monthly payments and to provide Suntrust

18 with various documents and personal information.  (Id. ¶ 12, Ex.

19 2 §§ 1, 2, 4.)

20         The TPP states that

21     If [plaintiffs] are in compliance with this Trial
       Period Plan . . . and [plaintiffs'] representations in
22     Section 1 continue to be true in all material respects,
       then [Suntrust] will provide [plaintiffs] with a Home
23     Affordable Modification Agreement . . ., as set forth
       in Section 3, that would amend and supplement (1) the
24     Mortgage on the Property, and (2) the Note secured by
       the Mortgage.

25

─────────────────────

26     [1]    A copy of this document was attached to plaintiffs'
   Complaint as Exhibit 2.  As no party disputes the authenticity of
27 this document, the court will take judicial notice of it.  See In
   re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir.
28 1999).

2

1   (Id. Ex. 2 at 1.)  In section three, the TPP further cautions

2   that it is not a modification of plaintiffs' loan documents and

3   that modification is contingent upon plaintiffs' submission of

4   all required documents and information and Suntrust's

5   determination that plaintiffs qualify for a modification.  (Id.

6   Ex. 2 § 3.)  The TPP also clearly states that if Suntrust does

7   not provide plaintiffs with a fully executed copy of the TPP and

8   a modification agreement, no permanent modification will occur.

9   (Id. Ex. 2 § 2(G).)

10          Plaintiffs claim that they met their obligations

11  pursuant to the TPP in that (1) they "were and remained unable to

12  afford their mortgage for the reasons indicated on the hardship

13  affidavit submitted during the modification application process,"

14  (2) they "continued to reside in the Subject Property as their

15  principal residence," (3) they "provided documentation of all

16  their income," (4) they "were not required to obtain credit

17  counseling," (5) they "complied with Section 2 by making four

18  monthly payments in the amount of $1,088.28," and (6) "there was

19  no change in the ownership of the Subject Property."  (Id. ¶ 13.)

20  Nowhere do plaintiffs allege that Suntrust determined that they

21  qualified for a loan modification, as required under section 3 of

22  the TPP, or that they should have been determined to be qualified

23  for a loan modification.  (See id. Ex. 2, §3.)

24          According to plaintiffs, after making their fourth

25  modified monthly payment in April 2010, they contacted Suntrust

26  to learn the status of their application for a permanent

27  modification.  (Id. ¶ 14.)  Suntrust allegedly told them that

28  "the permanent modification paperwork would be forthcoming" and

1 that, until then, they should continue making modified payments.

2 (Id.)  For the next eighteen months, plaintiffs claim that every

3 month they made a modified payment and inquired about their

4 permanent modification application.  (Id. ¶ 15.)  Plaintiffs

5 further claim that each month, Suntrust again indicated that

6 permanent modification paperwork was forthcoming and that they

7 should continue making modified payments.  (Id.)

8        On January 3, 2011, and again on January 6, 2011,

9 according to the declaration of Fannie Mae loan negotiator Edward

10 Hamway, Suntrust mailed letters to plaintiffs advising them that,

11 due to missing updated documentation, Suntrust would not approve

12 their loan modification.  (Hamway Decl. ¶¶ 7, 8 (Docket No. 17-

13 1).)  According to Mr. Hamway, a similar letter was sent a third

14 time in November 2011.  (Id. ¶ 9.)

15        On November 7, 2011, Suntrust caused a notice of

16 Default to be recorded against the Subject Property.  (Compl. ¶

17 16, Ex. 3.)  Although plaintiffs attempted to make five

18 additional modified monthly payments after receiving the Notice

19 of Default, Suntrust returned these payments to them.  (Id. ¶ 17;

20 see also Am. Soin Decl. ¶¶ 32-36 (Docket No. 19).)[2]  According to

21 plaintiffs, when they contacted Suntrust, they were informed that

22 Suntrust and Fannie Mae were not offering them a permanent

23 modification and that they would need to reapply for a loan

24 modification, which they immediately did.  (Compl. ¶¶ 17, 18.)

25 Plaintiffs allege that with respect to the second loan

26

27        [2]   Defendants have submitted three objections to portions
of Mr. Soin's declaration.  (Docket No. 18.)  Because the court's
holding does not rely on any of the objected to evidence,
28 defendants' objections are dismissed as moot.

1  modification application, they submitted all supporting

2  documentation and "immediately complied" with Suntrust's requests

3  for additional documentation.  (Id. ¶ 18.)  Plaintiffs also

4  submit the declaration of Mr. Soin that "[o]n December 28, 2011,

5  [he] faxed all requested documents as per requested [sic] to

6  SUNTRUST MORTGAGE."  (Am. Soin Decl. ¶ 31.)

7           On February 8, 2012, plaintiffs discovered that

8  Suntrust had caused a second Notice of Default to be recorded.

9  (Compl. ¶ 19, Ex. 4.)  Plaintiffs allege that this occurred

10  before they were told whether their second application for a loan

11  modification had been accepted or denied.  (Id. ¶ 19.)  After

12  learning of the second Notice of Default, plaintiffs contacted

13  Suntrust and were allegedly informed that their second

14  application was being denied because they had failed to provide

15  all requested documentation.  (Id. ¶ 20.)  Plaintiffs claim that

16  this was a false statement.  (Id. ¶¶ 18, 20.)

17           In their Complaint, plaintiffs assert causes of action

18  for breach of contract, breach of the implied covenant of good

19  faith and fair dealing, and violation of California's Unfair

20  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  (Docket

21  No. 1.)

22           Defendant Suntrust removed the case to federal court on

23  March 13, 2012.  (Id.)  Plaintiffs filed a motion for a temporary

24  restraining order on March 20, 2012, alleging that the Subject

25  Property faced foreclosure on March 21, 2012.  (Docket No. 8.)

26  The court granted plaintiffs' motion on March 21, 2012.  (Docket

27  No. 15.)

28  II.  Discussion

1    "A plaintiff seeking a preliminary injunction must

2  establish that he is likely to succeed on the merits, that he is

3  likely to suffer irreparable harm in the absence of preliminary

4  relief, that the balance of equities tips in his favor, and that

5  an injunction is in the public interest." <u>Winter v. Natural Res.</u>

6  <u>Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008).  As the Supreme Court

7  has repeatedly recognized, injunctive relief is "an extraordinary

8  and drastic remedy, one that should not be granted unless the

9  movant, <u>by a clear showing</u>, carries the burden of persuasion."

10 <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (quoting 11A

11 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2948, at

12 129-30 (2d ed. 1995)); <u>see</u> <u>Winter</u>, 555 U.S. at 22.

13    After <u>Winter</u>, the Ninth Circuit has held that a

14 preliminary injunction may be appropriate where a plaintiff

15 demonstrates "that serious questions going to the merits were

16 raised and the balance of hardships tips sharply in the

17 plaintiff's favor," provided that the plaintiffs also satisfy the

18 other two <u>Winter</u> factors (public interest and irreparable harm).

19 <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35

20 (9th Cir. 2011).

21    A.    <u>Likelihood of Success on the Merits</u>

22    In their motion for a preliminary injunction,

23 plaintiffs discuss only the likelihood of success on their breach

24 of contract claim, which is based on the argument that defendants

25 breached the Home Affordable Modification Trial Period Plan

26 ("TPP") offered to plaintiffs by not offering them a permanent

27 loan modification.  Accordingly, the court will not address

28 plaintiffs' remaining two claims.

1          To recover on a claim for breach of contract, a

2 plaintiff must first show the existence of a valid contract.

3 First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745

4 (2d Dist. 2001).  Here, plaintiffs attempt to characterize the

5 TPP as a contract entered into by the parties that defendants

6 then breached.  Under the TPP, plaintiffs agreed to pay four

7 months of trial period payments while defendants determined

8 whether plaintiffs qualified for a permanent modification of

9 their loan.  (Compl. Ex. 2.)  The TPP, however, clearly states

10 that it is not a modification of plaintiffs' loan documents and

11 that modification is contingent upon a determination that

12 plaintiffs qualify for a modification.  (Id. Ex. 2 at Sec. 3.)

13 It also clearly states that if Suntrust does not determine that

14 plaintiffs are qualified and does not provide plaintiffs with a

15 fully executed copy of the TPP and a modification agreement, no

16 permanent modification will occur.  (Id. Ex. 2 at Sec. 2(G).)

17 While plaintiffs claim that they made trial payments and provided

18 requested documentation to defendants under the TPP, they do not

19 allege that Suntrust ever determined that they were qualified to

20 receive a permanent modification or that they ever received a

21 fully executed copy of the TPP or modification agreement.

22          Many district courts have held that TPPs such as the

23 one at issue here do not constitute binding contracts to

24 permanently modify loans.  See, e.g., Lucia v. Wells Fargo Bank,

25 N.A., 798 F. Supp. 2d 1059, 1069 (N.D. Cal. 2011) (dismissing

26 with prejudice claims for breach of contract where plaintiffs

27 alleged defendant had breached TPP by failing to offer permanent

28 HAMP modifications at the close of the trial period); Grill v.

7

1  BAC Home Loans Servicing LP, No. Civ. 2:10-03057 FCD, 2011 WL

2  127891, at *3-4 (E.D. Cal. Jan. 14, 2011) (Damrell, J.) (holding

3  that plaintiffs had not stated a breach of contract claim based

4  on a TPP because "no binding contract ha[d] been alleged"); Nadan

5  v. Homesales, Inc., No. Civ. 1:11–1181 LJO, 2011 WL 3584213, at

6  *6-7 (E.D. Cal. Aug. 12, 2011) (O'Neill, J.) (dismissing breach

7  of contract claims based on TPP with prejudice); Vida v. OneWest

8  Bank F.S.B., Civ. No. 10-987-AC, 2010 WL 5148473, at *6 (D. Or.

9  Dec. 13, 2010) ("The Trial Period Plan is explicitly not an

10  enforceable offer for loan modification.").  The same conclusion

11  was recently reached by a California Court of Appeal, which held

12  that "[a]s a matter of law, there was no contract" where the

13  defendant had offered the plaintiffs a TPP, but never had

14  prepared or executed a permanent modification agreement.

15  Nungaray v. Litton Loan Servicing, LP, 200 Cal. App. 4th 1499,

16  1504 (2d Dist. 2011).

17        Notably, two other judges of this court have held that

18  TPPs are not binding contracts for permanent loan modifications.

19  In Nadan, Judge O'Neill held that a TPP was not a valid contract

20  both because it lacked consideration and because the TPP was an

21  "unenforceable 'agreement to agree'" given that material terms of

22  the purported permanent modification were not specified.  Nadan,

23  2011 WL 3584213, at *6.  In Grill, Judge Damrell relied on

24  language in the TPP stating that modification was contingent upon

25  a determination that the plaintiff met applicable requirements

26  and receipt and execution of a permanent loan modification

27  agreement to hold that no contract had been alleged where the

28  plaintiffs, like plaintiffs here, did not allege that those

8

1  events had occurred.  <u>Grill</u>, 2011 WL 127891, at *4.

2        In an attempt to challenge this Eastern District of

3  California precedent, plaintiffs have cited only three cases in

4  which trial courts outside this district held that a plaintiff

5  could state a claim for breach of contract based on a TPP or

6  other trial period agreement.  None, however, are persuasive.

7  First, in <u>Ansanelli v. JP Morgan Chase Bank, N.A.</u>, No. C 10-3892,

8  2011 WL 1134451 (N.D. Cal. Mar. 28, 2011), the court considered

9  not whether a TPP such as the one involved here was a valid

10 contract, but whether an oral agreement regarding a trial period

11 was a valid modification of the plaintiffs' loan agreement.  <u>Id.</u>

12 at *3-5.

13       Second, <u>Turbeville v. JP Morgan Chase Bank</u>, No. SA CV

14 10-1464, 2011 WL 7163111 (C.D. Cal. Apr. 4, 2011), was a

15 purported class action lawsuit in which the court held that the

16 plaintiffs' submission of documentation supplied the necessary

17 consideration to form a valid contract.  However, as pointed out

18 in <u>Senter v. JP Morgan Chase Bank, N.A.</u>, 810 F. Supp. 2d 1339

19 (S.D. Fla. 2011), the court in <u>Turbeville</u> failed to consider

20 language in section three of the TPP cautioning that plaintiffs

21 would not be given a permanent modification until the lender

22 determined that they qualified and sent them a permanent

23 modification agreement for signature and, in relying on the

24 submission of financial information to show consideration, failed

25 to "distinguish between conditions for application and

26 consideration for an agreement."  <u>Id.</u> at 1349, 1356.  The latter

27 point is a distinction recognized by Judge Damrell in <u>Grill</u>.

28 <u>Grill</u>, 2011 WL 127891, at *4 (language in the TPP "makes clear

1   that providing the requested documents was simply a part of the

2   application process, which plaintiff was willing to complete in

3   the hope that [the lender] would modify his loan").

4           Third, plaintiffs cite In re Ossman, Case No. 1:11-bk-

5   16788-MT, 2012 Bankr. LEXIS 326 (C.D. Cal. Jan. 31, 2012), which

6   they did not bring to the attention of the court until

7   immediately before the hearing on this motion was scheduled.  The

8   bankruptcy court In re Ossman, however, relied heavily on

9   Turbeville and Ansanelli.  The three cases from outside this

10  district cited by plaintiffs do not convince the court to deviate

11  from the holdings in Grill and Nadan and create contradictory

12  precedent within the district.

13          Although neither party cited to it in their briefing, a

14  Seventh Circuit case, decided less than a month before briefing

15  was completed, also addresses the question whether TPPs are valid

16  contracts that a lender violates if they fail to offer a

17  permanent modification at the close of the four-month trial

18  period.  Wigod v. Wells Fargo Bank, N.A., --- F.3d ----, No.

19  11-1423, 2012 WL 727646 (7th Cir. Mar. 7, 2012).  In Wigod, the

20  plaintiff received a TPP that, like plaintiffs', provided that

21  "after I sign and return two copies of this Plan to the Lender,

22  the Lender will send me a signed copy of this Plan if I qualify

23  for the Offer or will send me written notice that I do not

24  qualify for the Offer.  This Plan will not take effect unless and

25  until . . . the Lender provides me with a copy of this Plan with

26  the Lender's signature."  Id. at * 7.  The TPP also warned the

27  plaintiff that before she would be given a permanent

28  modification, Wells Fargo had to determine that she qualified

10

1  under HAMP guidelines.  Id.  Wells Fargo then returned an

2  executed copy of the TPP and sent plaintiff a letter confirming

3  that she was qualified for a modification.  Id.

4        Applying Illinois law, the Seventh Circuit held that,

5  in light of the language in the TPP conditioning permanent

6  modification upon a determination that the plaintiff qualified

7  and receipt of a "fully executed copy of the Modification

8  Agreement," the TPP became a "unilateral offer to modify Wigod's

9  loan conditioned on her compliance with the stated terms of the

10  bargain" once Wells Fargo determined that she was qualified for a

11  modification and returned to her a countersigned copy of the TPP.

12  Id. at *7-8.  The court therefore held that a valid offer existed

13  to support the plaintiff's breach of contract claim.  Id.

14        Here, unlike in Wigod, plaintiffs have submitted a copy

15  of the TPP signed by them only.  It does not appear that Suntrust

16  returned an executed copy of the TPP or determined that

17  plaintiffs were qualified to receive a permanent modification.

18  Under the logic of Wigod, therefore, it does not appear that

19  there was ever a "unilateral offer to modify [plaintiffs'] loan."

20  Id. at *7.  Instead, plaintiffs were invited to apply for a loan

21  modification and cautioned that, in order to be considered, they

22  would have to take certain steps.  As suggested by Wigod, without

23  an offer for a permanent modification, there was no contract for

24  a permanent modification for defendants to breach.

25        Plaintiffs have failed as a matter of law to allege

26  facts sufficient to establish that they entered into a contract

27  to permanently modify the terms of their loan.  Therefore, they

28  have not shown a likelihood of success on the merits of their

11

1 breach of contract claim.

2    B.    Irreparable Harm

3        If the injunction is not granted, plaintiffs face the

4 risk that the Subject Property, which they represent is their

5 primary residence, will be sold.  The loss of property is often

6 considered an irreparable loss because of the unique nature of

7 real property.  Alcaraz v. Wachovia Mortg. FSB, 592 F. Supp. 2d

8 1296, 1301-02 (E.D. Cal. 2009) (noting that the loss of a home is

9 a "serious loss," but denying motion for preliminary injunctive

10 relief); Avila v. Stearns Lending, Inc., No. Civ.

11 08-0419-AG(CTx), 2008 WL 1378231, at *3 (C.D. Cal. Apr. 7, 2008).

12 Accordingly, plaintiffs have demonstrated the risk of irreparable

13 loss.

14    C.    Balance of Equities

15        "A preliminary injunction is an extraordinary remedy

16 never awarded as of right."  Winter, 129 S. Ct. at 376.  "In each

17 case, a court must balance the competing claims of injury and

18 must consider the effect on each party of the granting or

19 withholding of the requested relief."  Amoco Prod. Co. v. Vill.

20 of Gambell, Alaska, 480 U.S. 531, 542 (1987).

21        Defendants contend that, if an injunction is granted,

22 they stand to suffer financial hardship because they will incur

23 damages in the form of lost rental value, lost earned interest,

24 and lost profits due to the property's depreciation in the

25 interim.  As a practical matter, defendants will never be able to

26 recover for that loss.  Defendants have not, though, demonstrated

27 that an injunction would damage the Subject Property or otherwise

28 threaten any security interest in the property.  This is less of

12

1 | a burden than plaintiffs stand to suffer if they lose their home
2 | through a foreclosure sale.

3 |         Although plaintiffs emphasize the hardship they will
4 | bear if they lose their home, there are other factors the court
5 | must take into account.  It is a well-established maxim that "he
6 | who seeks equity must do equity."  <u>Mfr.'s Fin. Co. v. McKey</u>, 294
7 | U.S. 442, 449 (1935).  Plaintiffs currently owe over $70,000 on
8 | their mortgage and for over two years they have been making only
9 | modified payments on their loan.  The only bond that they offer
10 | to post is one in the form of monthly payments in the amount of
11 | $1,088.28, the same amount as the monthly trial payments required
12 | under the TPP, which defendant represents is more than one-third
13 | less than their regular monthly payments.  (Opp'n to Mot. for
14 | Prelim. Inj. at 21:8-9 (Docket No. 17).)

15 |         In such a situation, it is not clear that the balance
16 | of equities tips in plaintiffs' favor.  Rather, it seems likely
17 | that granting plaintiffs' request for a preliminary injunction
18 | would allow them to delay, prolonging the period of time that
19 | they have been able to retain the property at issue without
20 | paying the full obligations due under the loan and preventing
21 | defendants from exercising their rights to foreclose on the
22 | property.  <u>See</u> <u>Alcaraz</u>, 592 F. Supp. 2d at 1305-06.

23 |     D.   <u>Public Interest</u>

24 |         "In exercising their sound discretion, courts of equity
25 | should pay particular regard for the public consequences in
26 | employing the extraordinary remedy of injunction."  <u>Weinberger v.</u>
27 | <u>Romero-Barcelo</u>, 456 U.S. 305, 312 (1982).  "The public interest
28 | analysis for the issuance of a preliminary injunction requires

1   [the court] to consider 'whether there exists some critical

2   public interest that would be injured by the grant of preliminary

3   relief.'"   Indep. Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly,

4   572 F.3d 644, 659 (9th Cir. 2009) (quoting Hybritech Inc. v.

5   Abbott Lab., 849 F.2d 1446, 1458 (Fed. Cir. 1988)), vacated on

6   other grounds, 132 S. Ct. 1204 (2012).

7            Neither party has addressed this factor in any detail.

8   However, the court cannot see that delaying the foreclosure sale

9   of plaintiffs' property would injure a critical public interest.

10  Accordingly, this factor weighs slightly in plaintiffs' favor.

11  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir.

12  2009) ("When the reach of an injunction is narrow, limited only

13  to the parties, and has no impact on non-parties, the public

14  interest will be 'at most a neutral factor in the analysis rather

15  than one that favor[s] [granting or] denying the preliminary

16  injunction.'" (quoting Bernhardt v. L.A. Cnty., 339 F.3d 920, 931

17  (9th Cir. 2003)) (alterations in original)).

18           Balancing the relevant factors, especially given

19  plaintiffs' failure to show any probability of success on the

20  merits of their claim, the court finds that plaintiffs are not

21  entitled to a preliminary injunction.

22           IT IS THEREFORE ORDERED that plaintiffs' motion for a

23  preliminary injunction be, and the same hereby is, DENIED.

24  DATED:  April 12, 2012

25

26                                      _____

                                        WILLIAM B. SHUBB

27                                      UNITED STATES DISTRICT JUDGE

28

                                   14